REC'D JUL 18

UNITED STATES DISTRICT COURT
DISTRICT FOR E. PENNSYLVANIA
_____X
MARTIN L. COHEN, pro se,
                      Plaintiff,
            -v-
RUSSELL RICHARDSON, individually,
And acting in an "ultra-vires" capacity, as
A federal agent, and other federal agents,
                      Defendants.
_____X

Index No.

**COMPLAINT FOR FRAUD
AND TAX EXTORTION**

*Request for a jury trial.*

## BACKGROUND

This matter emanates from an underlying case involving the plaintiff's mother's estate. In that matter, the plaintiff's family had come to an agreement about the estate plan of the parents, Lorraine and Stanley Cohen. Essentially, the agreement was that the three children, Martin, Janet, and David would receive equal amounts.

The parents had started a for-profit college, Five Towns College (the "College"). In 1992, the family decided to acquire a valuable parcel of real estate for a new campus. As part of the estate plan, the real estate was placed in an irrevocable trust, the Five Towns College Real Property Trust (the "Trust") with the three children as equal beneficiaries. Martin was the only child who worked at the College for nearly 20 years before his siblings came onboard.

From 1988 to 1991, David, the youngest child, was a lawyer with the law firm of Ronald Rosenberg. However, the College became very successful, so David decided to leave Mr. Rosenberg's law firm. David and Mr. Rosenberg were very close, and Mr. Rosenberg wanted to be involved with the College very much. However, there was no need for his services.

Determined to be involved, Mr. Rosenberg started to counsel David. He told David that he could help him eventually control the entire family business. This was an inducement that David could not ignore, so Mr. Rosenberg began to act behind the scenes, as an undisclosed party. However, he failed to tell David that ultimately this would cost the family over $10 million dollars in legal fees. This was an amount as large as the entire book value of the College. He also failed to tell David that David would have to lie in order to oust other family members.

Although the family had an agreed upon estate plan, once Mr. Rosenberg started to become involved, he orchestrated behind the scenes alterations of the estate plan. The plaintiff would learn years later that Mr. Rosenberg connived Stanley Cohen, the father, and College President to alter the estate plan in a manner that would enable only David and his father, Stanley, to control and enjoy the family wealth.

A number of other transactions occurred which the plaintiff, Martin, did not agree with, and was forced to accept. This included a family limited partnership (the "FLP") which was designed to supersede the Trust and the other aspects of the family estate plan. By dividing the family members, other attorneys started to become involved. Since Mr. Rosenberg had been involved from the start, he convinced the other attorneys to go along with him. Eventually, this led to a collusive lawsuit with Mr. Rosenberg, as the mastermind.

Afraid that the plaintiff, Martin, would take legal action against him, Mr. Rosenberg concocted a false scheme which included a false and fraudulent narrative in order to blame Martin for tax fraud. David went along with the plan since a conviction for tax fraud would cause Martin to forfeit his share of his parent's estate, and thus, would unjustly enrich David. Although, Mr. Rosenberg had no factual basis for any allegations against Martin, he promoted and spread a false narrative that Martin was a bad person, incompetent, selfish and even dangerous.

Meanwhile, Mr. Rosenberg had, in his own words, a "special relationship" with certain IRS agents. This included Mr. Russell Richardson. As a further inducement to entice David into a scheme to enrich himself with Mr. Richardson, they plotted so that David would also get a financial award under the Federal False Claims Act. In order to protect David, they convinced Stanley, who is 94, to file the claim in his name, and to make David the beneficiary under Stanley's will.

Unfortunately for Mr. Rosenberg, during the course of the underlying lawsuit, Long Island's only daily newspaper, Newsday, published a special Investigative Report, "The Insiders", (Oct.5, 2014, p.1) that exposed an improper relationship between Mr. Rosenberg and a State Supreme Court Justice, Emily Pines. This shocked the plaintiff because Justice Pines was also the justice in his mother's estate case in which Mr.Rosenberg was opposing counsel representing his brother, David. The Investigative Report demonstrated that Mr. Rosenberg was a dishonest attorney. Moreover, it became clear to the plaintiff that he was caught , not only in a collusive lawsuit, but one that was also corrupt.

During the course of the underlying lawsuit, the plaintiff began noticing that documents relating to his case started to become missing. Then his cash and other belongings began to start disappearing. Someone was coming into his home and breaking into his law office, and in his music studio. He reported the break-ins to the local police., but they would not get involved with a matter involving federal agents.

Eventually, the plaintiff's brother, David, did get control over the College. When he did, he immediately had Martin fired from his position at the College. At about the same time, Martin's wife left him. Martin would find out much later that this was a co-ordinated effort. The judge overseeing the divorce would not grant Martin any maintenance even though he was then unemployed, and the Court would not award him the cost of an attorney which was mandated by law. In the end, Martin lost all of the marital estate valued at $2.5 million dollars, and essentially was left with $75,000, after a 30 year marriage. Martin would find out later that Mr. Richardson and IRS agents were involved. Moreover, the judge in the divorce proceeding, also had an improper relationship with Mr. Rosenberg. This was all part of a premeditated plan to destroy the plaintiff.

However, it wasn't until the plaintiff started teaching at Queens College that he found out that Mr. Richardson had been behind all the efforts to financially destroy the plaintiff. Moreover, Mr. Richardson started to repeat the false narrative to the plaintiff's teaching colleagues at Queens College that the plaintiff was a bad person. Once Mr. Richardson started to spread the false narrative, the plaintiff was able to trace it back to Mr. Richardson, and other IRS agents. Some faculty threatened to help Mr. Richardson by willing to testify against Martin in a tax fraud case.

**JURISDICTION**

1. In an earlier, but related case, Mr. Richardson, attempted to create a false double-billing scheme in which the plaintiff would be double-charged for social security under-payments which occurred in the Philadelphia offices of the Social Security Administration, although that matter was settled. Mr. Richardson also attempted to ruin the plaintiff's credit with Citibank.

See *Cohen v. Social Security Administration and Citibank,* USDC EPA, 2:20-cv-02580 (2020) (KSM) and 2:20-cv-02589 (2020) (KSM). Also see *Cohen v. SSA, Citibank and Richardson,* USDC EPA, 2:20-cv-04341 (2020) (NIQA).

2. Philadelphia, Pa. is the headquarters of the Middle States Association / Commission on Higher Education (MSA). There is evidence that Mr. Russell Richardson and other IRS Agents created and communicated a false and negative narrative over several years to MSA officials in order to blame the plaintiff, Martin Cohen, in an adverse accreditation decision involving Five Towns College. The plaintiff has a financial interest in Five Towns College, a for-profit college.

3. Philadelphia, Pennsylvania is also the regional headquarters of the US Federal Reserve Bank. In a Special Investigative Report, "The Insiders", *Newsday,* Oct. 5, 2014, p.1, it was reported that Mr. Ronald Rosenberg, Esq., (an accomplice of Mr. Richardson) unlawfully benefited from the misappropriation of funds from commercial banks which included those banks supervised by the Federal Reserve Bank in Philadelphia, PA. When the plaintiff, Martin Cohen, tried to notify Federal Reserve officials by traveling to Philadelphia, PA, his written complaints were intercepted by federal agents including Russell Richardson, so no action could be taken.

4. Finally, the plaintiff is in the process of moving to eastern Pennsylvania.

## PARTIES

5. Mr. Martin L. Cohen, MBA, JD, the plaintiff, is a university professor and a retired attorney. He currently teaches auditing and accounting at Queens College. His parents founded Five Towns College, a for-profit college located in Dix Hills, NY. As part of his parents estate plan, he is a beneficiary / co-trustee in the Five Towns College Real Property Trust (the "Trust"), and is a limited partner in the Cohen Family Limited Partnership (the "FLP").

6. The plaintiff, Martin Cohen, will soon be 70 years old. He has never been arrested or convicted of any crime. He has no criminal record, or any record of wrongdoing during his lifetime. He has enjoyed a well earned reputation for fairness, compassion, honesty, and has been admired by many. Nonetheless, he has led a relatively quiet life as an academic and business professional on Long Island. He now seeks to restore his reputation, financial independence, and right to work which has been attacked by Mr. Richardson and other federal agents.

7. Mr. Russell Richardson, CPA, the defendant, is an IRS Special Agent from Long Island, NY, who may have recently retired. For many years, he was an agent in the Garden City and Bethpage Offices  of the IRS Field Offices. He has had many years of association with LI attorneys, and he was assigned to an underlying matter involving the plaintiff's civil case matter which involves his mother's estate.

## SUMMARY OF FACTS
(dates are approximate)

# - May 1992 to 2005 -

*Mr. Richardson and IRS Agents unlawfully participated in the Trust closing ceremony .*

8. The Trust closing ceremony took place on July 24, 1992. A number of unexplained changes

were discovered at the closing ceremony. Most of the changes were to the detriment of the

plaintiff. For example, the option to re-repurchase the land by the College was changed. The

number of years was changed which turned Martin's interest from a residuary interest to a life /

income interest.

9. Martin's suspicions arose when the Trust attorney representing the family did not attend the

closing to represent the family's collective  interests. Since these unexplained issues involved

more than one person, it became obvious that a collective effort to defeat the estate plan was

underway. When he told his father afterwards of these "mistakes", his father acted strangely, but

did not want to correct the mistakes.

10. Little did Martin know, but with the help of David (Martin's brother), Mr. Richardson and

Mr. Rosenberg, they created a false narrative to persuade Stanley to try and disinherit Martin.

Even worse, they convinced Stanley, his father, to file a baseless False Claim action against

Martin for tax fraud. Planning this strategy required Mr. Richardson's expertise as a CPA, and an

IRS Special Agent. As an IRS insider with contacts inside the IRS, he could easily facilitate and

promote a false claim award for Martin's father.

*Mr. Richardson and federal agents come to Five Towns College to spread a false narrative.*

11. In order to defeat the plaintiff in the upcoming estate matter, Mr. Richardson, in a concerted effort to defeat the plaintiff's interests in his mother's estate, came to the place of employment where the plaintiff worked. There he bad-mouthed the plaintiff and spread a false narrative that was intended to prejudice the plaintiff's position in a court-trial. Mr. Richardson attended concerts run by the plaintiff at the College's theater where he told lies to the various artists, musicians, theater personnel, and others about Martin, and continued to spread the false narrative.

### *Mr. Richardson and IRS Agents Then Come to Merril Lynch*

12. By 1999, Martin left employment at the College because of abuse and mistreatment. This mistreatment was a cooperative effort in which Mr. Richardson played a significant role by spreading the false narrative throughout the College where he was shunned and disrespected. So, Martin left the College to work at Merrill Lynch in New York City. There, Mr. Richardson followed Martin and told senior executives, in private, that the plaintiff was a bad person and continued to spread at the false narrative throughout the company.

13. Moreover, Martin was a bright and successful business executive, but he was having some unusual and unexplainable difficulties with many prospects and clients. Martin would eventually find out that Russell Richardson, and other IRS agents were continuing to spread the false narrative about him at Merrill Lynch, so that potential clients would refrain from doing business with him. The goal was to insure that Martin's financial resources would suffer, so that he could

not properly represent his interests in his mother's estate matter, and to assist in the effort to bring the phony False Claims action to fruition.

## - 2005 to 2009 -

14. In 2005, Martin tried to help his family sell their for-profit college, Five Towns College, as a way of settling their differences. To the families pleasant surprise, he obtained a written offer of $65 million dollars.  **Exhibit A.** This unexpected offer should have rewarded the Cohen family for over 30 years of hard-work and sacrifice. It would have also settled any family disputes about succession plans for the College, etc. However, instead the news attracted dishonest attorneys, dirty politicians, and others, who have attempted to grab unjustified legal fees, commence hollow legal proceedings, and assert false claims of tax fraud upon family members in order to advance their own interests. Had the family accepted the offer of $65 million, then Mr. Rosenberg's scheme would have failed. It would have also prevented Mr. Rosenberg and the attorneys from collectively charging the Cohen family $10 million+ in legal fees.

### *Mr. Richardson and IRS Agents spread a false narrative throughout Martin's community.*

15. When the plaintiff lived in his home at the Woodbury Greens Condominiums, Mr. Richardson and IRS agents would spread the false and negative narrative throughout his condominium community. Martin was the Treasurer for his condominium community for many years, and enjoyed the respect and admiration of his neighbors. However, once Mr. Richardson secretly met with members of the Board of Directors, he was summarily removed as Treasurer, without cause and he was treated as a pariah of sorts. Later, when he moved to his present apartment in Oyster

Bay, NY neighbors shunned him because of the false and negative narrative continuing to being spread.

*Mr. Richardson and IRS Agents spread the false narrative to the Plaintiff's friends & family.*

16. Between Mr. Richardson and other federal agents, as well as his brother, David, they were able to continue spreading the false narrative to Martin's family members including cousins, aunts, uncles, etc. In addition, the plaintiff's childhood friends were approached by Mr. Richardson, and IRS agents, and began a process of turning his friends and relatives against him.

*Mr. Richardson and IRS Agents Add False Evidence in the College's Re-Accreditation.*

17. The College was fortunate since the College was able to become accredited by the Middle States Association /Commission on Higher Education. This is an organization that only admits the most prestigious colleges and universities. To become eligible for such recognition, the College must comply with Title IV of the Higher Education Act of 1965 (20 USC 1070). Under this arrangement, the College must sign a Participation Agreement with the US Office of Education, and adhere to federal regulations, as well, as the private rules of accreditation (i.e., by contract). It is critical to note that even though the rules of accreditation are private and voluntary, they carry the weight of the federal law since they become operating standards as a condition of receiving Title IV Federal Funds.

18. As a part of the legal and regulatory requirement with MSA, the College would need to be evaluated by an outside accreditation team every 10 years, and also undergo a comprehensive desk audit every other five year period. By 2006, the College had to undergo an evaluation by an outside MSA accreditation team.

19. What became known to the plaintiff at the time of the outside evaluation was that he was being blamed for most of the problems. The negative narrative emanating from Mr. Richardson and other IRS agents was also eventually spread through the College governing board, the MSA evaluation team members, and others throughout the College community. This resulted in the plaintiff was being shunned by his colleagues and employees. He was also excluded from important meetings, and denied access to sensitive documents. He was also demoted from a Vice-President to mid-level dean. He could not fully understand why.

20. The 2006 Evaluation Report was did not go as well, as expected. **Exhibit B.** MSA college and universities must be governed in a democratic and collegial manner. At Five Towns College, Stanley Cohen, as the College President was such a dominating and dictatorial force that the evaluators could not give the College a positive evaluation. They also cited a demonstrably weak governing board. These were factual findings by the independent MSA evaluation team, and were the result of bad advice given to Stanley by Mr. Rosenberg and Mr. Richardson, who were more concerned with the survival of the phony False Claims action, then the College's accreditation. The MSA evaluation team concluded that the College needed to improve in certain areas, and that the evaluators would eventually come back when the problems were rectified.

21. Unfortunately, the accreditation difficulties were organization-wide, and could not be easily rectified with the management strategy undertaken by Stanley, as the College President. What the evaluation team did not fully uncover at the time was that a major management fraud and misappropriation of funds (defalcation) was underway. Stanley attempted to merge the valuable real estate owned by the Trust with the College assets. This was motivated by the backroom scheme orchestrated by Mr. Richardson and Mr. Rosenberg. It was intended to defraud the Cohen

children, Martin and Janet, as well as the estate of Stanley's late wife, Lorraine. It was also

intended to allow the Mr. Rosenberg to continue charging the Cohen family for attorney's fees.

In 2009, during a probate hearing, the scheme was uncovered by the Surrogate's Court and found

that Stanley was self-dealing in the Trust and was Stanley was removed by the court, as the sole

Trustee of the Five Towns College Real Property Trust. **Exhibit C.**

22. In order to help David compensate and transfer funds to Mr. Rosenberg for his legal retainer,

Stanley shared excessive salaries from the College with his youngest son, David, in order to pay

Mr. Rosenberg. The excessive amounts that Stanley paid himself without authorization was

$3,620,305, and the excess amount paid to David was $1,516, 369, based on industry guidelines.

**Exhibit D.** The transfer of funds to David, and their transfer to Mr. Rosenberg is evidence that

Mr. Rosenberg was the de facto attorney, and undisclosed agent for Stanley Cohen. Their plan

was to deprive Martin of the financial resources so that Martin could not afford legal counsel,

while they were being able to hire all the attorneys they needed. By siphoning off cash from the

College, Stanley and David also made it impossible for the Trust or FLP to ever have any profits

or cash flow which would flow to the  benefit other family members. These facts were never

disclosed during the MSA accreditation team, and amount to a fraud on MSA. These facts were

also never disclosed to the College governing board. These facts form a prima facie case of

misappropriation of funds (defalcation) and management fraud. **Exhibit E.**

23. When the MSA evaluation team came back the second time, there were minor improvements,

but the College was still deficient in major areas which required an effective governing board,

and more administrative and financial accountability from the College President, Stanley Cohen.

The MSA evaluation team recognized the symptoms of a management fraud, but couldn't seem

to pinpoint the reason. This was because they were misled by Mr. Richardson and the false

narrative that he continued to spread. Instead of being re-accredited, the College received an

adverse decision  and  the College was placed on probation, putting in jeopardy the risk of losing

its accreditation. **Exhibit F**. By discrediting Martin as a target of an IRS investigation, they

blamed him. However, in reality he was not the one committing the crimes.


## - 2009 to 2014 -


### *A Collusive Lawsuit Ensues*

24. After a probate hearing in 2009 dealing with his mother's passing, David commenced a

lawsuit against his father. (See *Cohen v. Cohen*, NYS Sup. Ct. Riverhead, NY, No. 08-40466,

09-18376, 10-10934). However, the lawsuit was collusive. By then, Stanley was already 80 years

old. He was a music educator by training, and could no longer manage the litigation, so he

allowed David to win this action. He had always intended to legally transfer 100% control to

David, as the new Managing Partner, but at the expense and opposition of the other children.

This was how Stanley believed he would be able to still hold onto control. Stanley made David

his proxy. By this time, it became clear that their common goal was to defraud and deprive

Martin of his rightful inheritance, and oust him completely from the family altogether. This could

have only been accomplished with the assistance of Mr. Richardson, who could manipulate the

tax system since he was an insider. He also had access of surveillance capabilities.  Neither

David, nor Mr. Rosenberg wanted Martin to be around, someone who could expose them and

hold them accountable for their legal duties and obligations. Mr. Richardson was always in the shadows, not wishing to have his role uncovered. However, Mr. Richardson's presence at every turn... always loomed large. The presence of Mr. Richardson, an IRS Special Agent, throughout the civil lawsuits made it possible to extort Martin for criminal tax fraud. If Martin would retain his interests in the Trust and FLP. David, Stanley and Mr. Rosenberg made sure that the threat of criminal exposure would be impossible for Martin to tolerate. **Exhibit G.**

**Mr. Richardson and IRS agents use threats and intimidation against his attorneys.**

25. Once the litigation began, the plaintiff sought the advice of competent legal counsel. It wasn't apparent at first, but eventually it became clear that Mr. Richardson and other IRS agents were using intimidation and threats against any attorneys that wanted to advise Martin. Martin would retain an attorney, but they wouldn't take action. It eventually became clear that they were threatened by Mr. Richardson and other federal agents. The use of threats against defense attorneys by IRS Special Agents is a continuing problem. (See *Heller v. Plave,* 743 F. Supp. 1553 (S.D. Fla. 1990).

26. Moreover, the crime-fraud exception applies only to legal advise obtained before the alleged crime is committed, or during the commission of a crime. The crime-fraud exception does not apply to one seeking a bona fide defense. Therefore, if Mr. Richardson asserted the crime-fraud exception, in order to obtain privileged information from Martin's attorneys, it must have been made improperly and maliciously. (See *Magneton Technology Corps. v. Six Flags ,* 886 F. Supp. 2d 466 (D.Del. 2012) and *Shelbyzyane, LLC v. Genzyme Corp.,* Civ. Action, No.09-768-GMS (D. Del. 2013). Moreover, Martin never committed a crime or had a criminal record, so Mr. Richardson must have also lied to a federal judge about Martin in order to override the attorney-

client privilege. (It is also possible, but not likely, that Mr. Richardson was misled by Mr. Rosenberg).

***By using threats against attorneys, Mr. Richardson could obtain privileged information.***

27. All of Martin's attorneys were threatened by Mr. Richardson that they would be implicated in a criminal tax fraud scheme, if they helped Martin. So, Mr. Richardson got Martin's attorney's to capitulate to Mr. Richardson's threats. This only exacerbated the effect of tax extortion upon Martin. Mr. Richardson would  allow Martin to meet with the attorney's, but only to allow Martin to tell his story, and convey otherwise privileged information to Mr. Richardson. The attorneys would not do anything, except bill Martin for their time. Martin wasted over $400,000 this way. See sample legal bill **Exhibit H.** Mr. Richardson knew very well that since he had neither the facts, or the law on his side, and that he would need to bankrupt Martin. This would be the perfect way to keep Martin from retaining competent counsel.  Mr. Richardson, acting in an "ultra-vires" capacity created the perfect crime by leaving Martin defenseless.

***Newsday Publishes a Special Investigative Report, "The Insiders"***

28. During the period of the collusive lawsuit, Newsday, Long Island's only daily newspaper published a Special Investigative Report, "The Insiders" (Oct.5, 2014, p.1) which highlighted a corruptive and improper relationship between Mr. Rosenberg and NYS Supreme Court Justice Emily Pines in a different case. **Exhibit I**. At the time, this was shocking to the plaintiff because Justice Pines was also the presiding justice in the plaintiff's case, along with Mr. Rosenberg, who represented his brother David. Justice Pines eventually had to recuse herself, but her corrupt decisions remained in effect. The Investigative Report disclosed how Mr. Rosenberg could skim

money from court-ordered receivership funds without objections from Justice Pines. Justice

Pines needed Mr. Rosenberg's help with an endorsement from the Independence Party and her

upcoming re-election campaign.

## - 2014 to 2017 -

### *Martin seeks a cooperation agreement with the IRS*

29. Before Martin was aware of Mr. Richardson's malicious intent, the plaintiff decided to meet

with Mr. Richardson at IRS offices and gave him the necessary proof to alleviate any possibility

that the plaintiff may have been involved in anything illegal. However, Martin did not realize

that Mr. Richardson was corrupt until much later. Martin gave Mr. Richardson the entire set of

financial statements and tax returns for Five Towns College, the Five Towns College Real

Property Trust, and the Cohen Family partnership. This included over 35 years of important and

relevant documentary evidence. **Exhibit J**. Later, one of the attorneys, Mr. Howard Miller, who

was also colluding with Mr. Rosenberg commenced a one-sided legal action to discredit all this

information which included independent certified financial audits. At the time, Martin had no

idea of what was happening. This action was a fraud-on-the-court.


### *Mr. Richardson and IRS agents block court communications during the Plaintiff's divorce*

30. In 2014, Martin's wife filed for divorce since she had inside knowledge of the fraud against

Martin. Martin was unaware that she was cooperating with Martin's father, Stanley. Without

elaborating, the plaintiff was married for 30 years. When he told the presiding justice about the

Five Towns College case, she threatened him with a horrible outcome. When Martin brought up

the fact that the IRS was involved, she verbally threatened him if he filed any motions involving

his expected inheritance in Five Towns College (which had to be disclosed as a matter of law in a

divorce proceeding). Furthermore, the judge directed him to file this motion only "under-seal".

Nonetheless, the outcome for the plaintiff was still horrible. Out of a $2.5 million marital estate,

he received only $90,000, and lost his home. It was determined later that Mr. Richardson had

played a role in the divorce proceeding, by blocking his communications with the court, and

stealing his calendars, law office memoranda, and causing him to miss important court

appearances which put him into default.

### Mr. Richardson and IRS Agents are improperly influencing the Plaintiff's Physicians.

31. The events described above were not only intended to defraud and deprive Martin of his

financial resources, but also to destroy his health. Due to the fraud at the Trust closing, he could

not obtain any of the Trust benefits such as funds for his medical and dental expenses, legal fees,

so that he could be properly represented, and anything needed for his personal welfare. He

originally believed that his father was purposely exposing him to an unhealthy level of stress, so

he went to seek the assistance of his physicians. Frustrated that a law enforcement official would

try to meddle with a physicians directions, the plaintiff notified the Medical Society of NY State.

As expected, Mr. Richardson blocked any response or other communications from the Medical

Society. **Exhibit K.**


32. Despite the doctor-patient privilege, Mr. Richardson and IRS agents have completely ignored

the doctor-patient relationships of the plaintiff. The plaintiff asked Dr. Schwartz and Dr. Kirschen

to write letters about the extreme stress being put upon Martin at the time. Afterwards, in an

attempt to "flip" them as witnesses, Mr. Richardson deliberately scared and intimidated them to

the point where they allowed Mr. Richardson to have input into the doctor's decisions affecting

the plaintiff. The plaintiff already had one bad experience during surgery where the

anesthesiologist administered the medicine in a manner that caused the plaintiff to stop

breathing. It is very clear that Mr. Richardson is meddling with the plaintiff's physicians in a

manner intended to cause the plaintiff bodily harm.

## - 2017 to 2021 -

### *Mr. Richardson and IRS Agents followed the Plaintiff to Queens College.*

33.  After Martin was fired by his brother, David, from his position at Five Towns College, the

plaintiff was fortunate to get a new part-time teaching job at Queens College. Once there, he

never disclosed what was happening in his personal life to anyone. Despite this, somehow  the

faculty in his department already knew about the situation with the IRS. So, it was clear that the

prejudicial and fraudulent narrative was already being spread by Mr. Richardson, and other IRS

Agents. Moreover, since he taught in the Department of Accounting, some faculty on their own

initiative told him that they already told Mr. Richardson that they would testify against him on

behalf of the IRS. Moreover, he was improperly disqualified from applying for full-time teaching

status, and was given a low professorial rank, one that was consistent with a new instructor, and

did not recognize his 40+ years of teaching experience.

Despite the fact that Mr. Richardson was attempting to undermine Martin's position as a

university professor, Martin always received excellent ratings:

 -  The students always gave Martin high praise and ranked him 4.1 out of 5 in college surveys.

**See Exhibit L.** In the attached survey, student comments included such statements as;

(#2) "He is kind and thoughtful where he gives everyone a chance to succeed."

(#4) " This professor was very nice and inspirational."

(#12) "Instructor really cares about students and tries to connect the real world."

There are dozens more complimentary remarks about the plaintiff and his positive influence on students.

 - The plaintiff's immediate supervisor, Dr. Arthur Adelberg, former Dept. Chair, personally observed an in-class lesson given by the plaintiff which he characterized, as "*very good.*" See **Exhibit M.**

 - . In addition, senior management at the College also gave very good recommendations of Martin's overall ability. **See Exhibit N.**

Despite the positive contributions made by the plaintiff, Mr. Richardson had one or two faculty complain about Martin. These faculty were the ones that threatened to testify against Martin on behalf of Mr. Richardson based on their own self-interest as tax practitioners. In a letter to Martin, Dr. Kate Pechenkina was obviously pressured to state that, "Some faculty have expressed fear for their safety." **Exhibit O.**  Such a a statement fits the prejudicial and fraudulent narrative being promoted by Mr. Richardson in his secret meetings at Queens College. This is merely one more attempt to get Martin fired, or at least have his income reduced.

It is clear that the fraudulent and malicious statements  being used against the plaintiff in a pre-trial tactic to prejudice his legal and constitutional rights in any upcoming legal proceeding.


### *Mr. Richardson and IRS Agents block the Plaintiff from other businesses.*

34.The plaintiff had other sources of income. He taught piano, and played music professionally.

He also did consulting for other educational organizations. He recently reached out to his contact

at Google to develop a part-time position there, but his response was blocked by Mr. Richardson.

**Exhibit P**. Eventually, the plaintiff began to recognize a pattern when persons and organizations

started to treat him in a manner consistent with the prejudicial and fraudulent narrative that was

being unfairly spread to others by Mr. Richardson. Eventually, these additional sources of

income were lost because of Mr. Richardson.

### *Mr. Richardson and the Whistleblower Reports*

35. Between 2018 and 2019, the plaintiff filed four Whistleblower Reports filled with important

evidence that his father and brother were involved in a tax fraud scheme. He also gave copies to

Mr. Richardson to use in order provide Mr. Richardson with exculpatory evidence that he was

not the tax cheat. However, as a corrupt IRS Special Agent, Mr. Richardson was able to

undermine the credibility of the reports, and they were denied by the US Treasury, as a result.

Mr. Richardson does not care about the evidence. He does not care about facts. He is a criminal,

posing as an IRS Agent.

### **Mr. Richardson and the IRS RAVIS Team**

36. Later, the plaintiff attempted to get copies of the tax returns that were stolen from his office

by Mr. Richardson. The RAVIS team is an IRS Office which makes copies of tax returns for

those meeting certain criteria. Since Martin was a Trustee of the Five Towns College Real

Property Trust, he ought to have been entitled to copies of income tax returns for the Trust from

the IRS RAVIS team. He made the request three times and was denied for no reason. It is clear

that Mr. Richardson wants to prevent Martin from obtaining this evidence which is not favorable

to plaintiff's father and brother. A copy of the fourth try is attached. **Exhibit Q.**

### Mr. Richardson and the US Federal Reserve

37. Then, when the plaintiff traveled to Philadelphia, PA to deliver a complaint that Mr.

Rosenberg was skimming funds from commercial banks in their region, Mr. Richardson

intercepted the complaint, and blocked the Federal Reserve Bank from taking corrective action.

Mr. Richardson motive is obviously personal gain. **Exhibit R.**

## - 2021 to Present -

### *Mr. Richardson and IRS Agents ruin the Plaintiff's relationship with his daughter.*

38. As if things couldn't get worse, they got even worse. After losing his executive position with

Five Towns College, losing his home in a one-sided show divorce, and being shunned by his

friends, his only daughter was directed not to speak with him by Mr. Richardson. He always had

a good relationship with his daughter Lindsey. However, her husband was a criminal tax attorney

and was told not to offer legal assistance to Martin, or help him in any way, or else! They were

even told  to stay away from Martin.  This also prevented the plaintiff from ever seeing his two

grandchildren who were just born recently. Both of the plaintiff's grandchildren are under the age

of two. What could be Mr. Richardson's motive for keeping him from his family and seeing his

newborn grandchildren? This was cruel and inhumane. This was conduct intended to hurt the

plaintiff, and cause him severe emotional distress. This was a gross violation of his Eighth

Amendment rights.

*Mr. Richardson and IRS Agents continue to steal evidence from the Plaintiff's law office.*

39. The lawsuit involving the family estate plan involves many important legal documents. The Plaintiff stores and files them in his law office which is in a portion of his home and apartment. First, documents for periodic pre-trial meetings with the judge began missing, then documents evidencing the various estate transactions began missing. Moreover, the local police will not get involved in a federal matter, and have refused to investigate. **Exhibit S.**

*Mr. Richardson and IRS Agents are meddling with the Plaintiff's move to Pennsylvania.*

40. Once the plaintiff saw that Mr. Richardson was attempting to deliberately diminish his financial resources, the plaintiff realized that he could no longer afford his apartment. So, he is attempting to move to a more affordable location. Intending to frustrate this initiative, Mr. Richardson had the Craig's List ad responses from rental apartment ads electronically blocked on Martin's computer. Then, the only availabilities that responded were those that Mr. Richardson knew would be unacceptable to the plaintiff (such as a 4-story walk-up). The plaintiff is still attempting to move, but his attempts keep getting thwarted, and Mr. Richardson is continuing to disrupt his search. Mr. Richardson wants Martin to live like a homeless person, and without any access to his documents or law office. Mr. Richardson is aiding and abetting criminals.

### Irreparable Injury To The Plaintiff

41. The events described above have caused serious economic and financial losses and damages to the plaintiff's personal and financial resources. The facts enumerated above make it plainly clear that Mr. Richardson, as a Special Agent, is being used by the plaintiff's adversaries to

*Richardson be enjoined from associating or communicating with plaintiff's employers (including Queens College), physicians (including Dr. Richard Abrash and Dr. Karen Schwartz), and attorneys (including Gary Schoer, Esq. and Edmund Mendrala, Esq.).*

## CONCLUSION

46. IRS Agents, including Mr. Richardson, are authorized to investigate lawfully, and to the extent allowed by the US Constitution. They are not authorized to use their power or authority to help their political allies and friends in order to further their own self-interests. These are "ultra-vires" activities. Mr. Richardson, and his accomplices have undertaken a full-throated effort to personally defraud the plaintiff of his financial resources, employer relationships, and in every facet of the plaintiff's life as a citizen of the United States of America. This includes the loss of his home in a divorce. This complaint outlines the various forms of unlawful behavior that Mr. Richardson has been involved with, and to begs this court for relief.

### CAUSES OF ACTION

### COUNT I

*18 USC 371 Conspiracy to Commit Offense or to Defraud United States provides:*
*If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.*

Plaintiff re-alleges and incorporates by reference all allegations, in all preceding paragraphs, as if set forth herein. Russell Richardson has used his specialized knowledge and contacts, as an IRS insider, to arrange a scheme for a False Claims Action to be paid to Stanley Cohen, a 94-year old music educator. The scheme, co-arranged by Mr. Rosenberg, the attorney for David Cohen, is

intended to unjustly enrich his son, David, by creating a false and misleading statements in a

federal tax complaint.

## COUNT II

*18 USC 1001 Statements or entries generally provides:*
*(a) Except as otherwise provided in this section, whoever, in any manner within the jurisdiction*
*of the executive, legislative, or judicial branch of the Government of the United States,*
*knowingly and willfully -*
*(1) falsifies, conceals, or covers up by trick, scheme, or device a material fact;*
*(2) makes any materially false, fictitious, or fraudulent statement or representation; or*
*(3) makes or uses any false writing or document knowing the same to contain any materially*
*false, fictitious, or fraudulent statement or entry; shall be fined under this title, imprisoned*
*not more than 5 years...*

Plaintiff re-alleges and incorporates by reference all allegations, in all preceding paragraphs, as if

set forth herein. Russell Richardson has misused his apparent authority as an IRS Special Agent

to spread fraudulent and misleading information to officers and members of the Middle States

Association during the course of an accreditation evaluation of Five Towns College in violation

of federal law.

## COUNT III

*26 USC 7214 Offenses by officers and employees of the United States provides:*
*(a) Unlawful acts of revenue officers or agents*
*Any officer or employee of the United States acting in connection with any revenue law of*
*the United States -*
*(1) who is guilty of any extortion or willful oppression under color of law; or*
*(4) who conspires or colludes with any other person to defraud the United States; or*
*(5) who knowingly makes opportunity for any person to defraud the United States; or*
*(6) who does or omits to do any act with intent to enable any other person to defraud the*
*United States; or*
*(8) who, having knowledge or information of the violation of any revenue law by any person,*
*or of fraud committed by any person against the United States under any revenue law,*
*fails to report, in writing, such knowledge or information to the Secretary; shall be*
*dismissed from office or discharged from employment and, upon conviction thereof, shall*
*be fined to more than $10,000, or imprisoned  not more than 5 years, or both....*

- Plaintiff re-alleges and incorporates by reference all allegations, in all preceding paragraphs, as if set forth herein. Mr. Russell Richardson and others have created a fraudulent and prejudicial narrative which they have spread in an effort to extort the plaintiff of continuing his vested interests in his parents estate plan. This was a concerted effort led by Mr. Richardson to aid Mr. Rosenberg's client, David. They put undue influence upon Stanley Cohen, to make this happen by depriving the plaintiff of his financial resources necessary to maintain a proper legal defense of his inheritance, and threatening the plaintiff with criminal charges, if he should hold onto his vested interests in the family estate plan.

- Plaintiff re-alleges and incorporates by reference all allegations, in all preceding paragraphs, as if set forth herein. Special Agent Russell Richardson conspired with Stanley Cohen and others to set-up a scheme to frame the plaintiff, Martin Cohen, with the intent to benefit from a False Claims Action. Stanley Cohen is a 94 year old music educator. By imposing undue influence on the elderly Stanley Cohen, they were able to have Stanley officially make the claim, and then arrange for David Cohen to be the beneficiary.

- Plaintiff re-alleges and incorporates, by reference all allegations, in all preceding paragraphs, as if set-forth herein. Special Agent Russell Richardson was made privy to several Whistleblower Reports which were filed with the US Treasury. The Whistleblower Reports were intended to expose various tax fraud schemes committed by Stanley Cohen and others. Instead of validating the Whistleblower Reports, and identifying the tax cheats, Special Agent Russell Richardson

attempted to falsely make the plaintiff, Martin Cohen, the scapegoat for the wrongdoings of

others.

## COUNT IV

*18 USC 656 - Theft, embezzlement, or misapplication by bank officer or employee provides that:*
*Whoever, being an officer, director, agent or employee of, or connected in any capacity with any*
*Federal Reserve Bank, or member bank......embezzles, purloins, or willfully misapplies any of*
*the moneys, funds or credits of such bank, branch, agency....shall be fined not more than*
*$1,000,000, or imprisoned not more than 30 years, or both....*

 - Plaintiff re-alleges and incorporates, by reference, all allegations in all preceding paragraphs,

as if set forth herein. Special Agent Russell Richardson is a person referred to under the statute as

"connected in any capacity".  This would include his role as a federal agent authorized to

investigate any crimes against the bank and apprehend the perpetrator.  Instead, Mr. Richardson

participated in a cover-up to aid and abet Mr. Rosenberg's fraudulent scheme involving the

misappropriation of funds from court-ordered receivership funds in a bank which is a member of

the Federal Reserve. The plaintiff prepared a complaint for the US Federal Reserve Bank

indicating the existence of the fraud. Instead of notifying the Secretary of the Treasury, Special

Agent Russell Richardson blocked the complaint from the bank's officials, or created a false and

misleading narrative in an attempt to discredit and nullify the complainant, Martin Cohen, the

plaintiff in this action instead of carrying out his duties as a federal agent.


## COUNT V

*A sovereign  like any other principal cannot authorize its agents to violate the law. When an*
*agent does so, his actions are considered "ultra-vires", and he is liable for his own conduct*
*under the law of agency.*

Plaintiff re-alleges and incorporates by reference all allegations, in all preceding paragraphs, as if set forth herein. Russell Richardson, and others have acted in a manner outside the scope of their lawful duties in order to pursue political and malicious objectives which are not in their job descriptions, and thus constitute "ultra-vires"activities. <u>Therefore, the plaintiff is entitled to equitable relief and a declaratory judgment that his civil rights under the Fifth Amendment have been violated.</u>

COUNT VI

*Any entitlement to qualified immunity is subject to challenge upon a showing of malice, and the allegation  that an investigation is politically motivated raises  an issue as to whether such entitlement exists.*

Plaintiff re-alleges and incorporates by reference all allegations, in all preceding paragraphs, as if set forth herein. Defendants, Russell Richardson, and others have acted in a malicious and retaliatory manner in order to cover -up the bad acts of a disgraced attorney with an insufficient basis for probable cause, or any other wrongdoing by the plaintiff. Moreover, there is sufficient exculpatory evidence for Mr. Richardson to find the real criminals, and not conspire with dishonest attorneys. Therefore, the plaintiff is entitled to equitable relief and a declaratory judgment that his civil rights and constitutional rights have been violated.

COUNT VII

*Communications made by a suspect after an alleged fraud has allegedly taken place are protected by the attorney-client privilege, and are not subject to the crime-fraud exception.*

Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs, as if

set forth herein. Mr. Richardson and other IRS Agents that are spreading false and negative

narratives about the plaintiff, includes information unlawfully obtained from plaintiff's attorneys.

These are attorneys that the plaintiff has retained and some others that he has consulted with.

None are willing to properly advise the plaintiff. This has made it impossible for the plaintiff to

obtain competent legal counsel. Since Mr. Richardson has demonstrated a malicious intent to

falsely charge the plaintiff, this matter must be referred to the Criminal Division of the US

Department of Justice for prosecution. Therefore, the plaintiff is entitled to equitable relief and a

declaratory judgment that his civil rights under the Fifth Amendment have been violated.

COUNT VIII

*Threatening statements made by federal agents to potential witnesses demanding that they are
either "a witness for the government or a criminal co-defendant" is a form of unlawful
intimidation.*

Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs, as if

set forth fully herein. Mr. Richardson and other IRS agents that are spreading false and negative

narratives about the plaintiff, but at the same time they are also demanding cooperation from

potential witnesses. This unlawful use of intimidation and the threat of criminal prosecution

without any basis in fact is intended to get potential witness to corroborate the government's lies.

Therefore, the plaintiff is entitled to equitable relief and a declaratory judgment that his civil

rights under the Fifth Amendment have been violated.

**PRAYER FOR RELIEF**

A. A declaratory judgment finding that Special Agent Russell Richardson acted unlawfully in

ignoring evidence of corruption, and instead choose to act with malice of forethought to aid and

abet corruption, thereby negating or cancelling any form of immunity, otherwise afforded them

by virtue of their employment or position.

B. A permanent injunction prohibiting Agent Russell Richardson to unlawfully search and seize

exculpatory evidence from the plaintiff's home and law office without a valid search warrant.

C. A referral to the Criminal Division of the US Department of Justice based on facts that Russell

Richardson and other federal agents have violated federal law 26 USC 7214(a), dealing with acts

of extortion associated with IRS Special Agents.

D. A finding that the IRS, acting in cooperation with IRS agent, Russell Richardson, deliberately

and improperly denied the plaintiff, Martin Cohen, copies of tax returns that he requested on

three separate dates.

E. Issuance of an injunction preventing Mr. Russell Richardson and other federal agents who

have acted complicity from any interaction with the plaintiff's daily life including his

employment (at Queens College), financial resources (including his landlords - present and

future), physicians (including Dr. Karen Schwartz and Dr. Richard Abrash), family (including his

daughter, Lindsey) and other close relationships such as friends (including Jeff Page and Lenny

Brenner).

**For all the forgoing reasons**, the plaintiff prays that such relief be granted without further delay.

Dated: July 17, 2022

Respectfully submitted,

Martin L. Cohen, pro se
1 Shore Avenue #464
Oyster Bay, NY 11771
Tel. (516) 364-7632
mart32753@aol.com